**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KTM AG,<br><br>  Plaintiff,<br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>  Defendants. | Case No.: |

**DECLARATION OF HUBERT TRUNKENPOLZ AND VIKTOR SIGL**

We, Hubert Trunkenpolz and Viktor Sigl, declare and state as follows:

  1.  This declaration is based upon our personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, we could and would testify to the statements made herein.

  2.  We are the members of the board of KTM AG and are knowledgeable about or have access to business records concerning all aspects of the brand protection operation of KTM AG including, but not limited to, its trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, media coverage, and associated international operations. We make this declaration from matters within our own knowledge, except where otherwise stated.

  3.  Plaintiff, KTM AG acts as the Sales, Marketing, Design and Distribution arm of KTM products worldwide.

1

4. KTM AG is in the business of developing, marketing, selling and distributing KTM products. KTM is an Austrian motorcycle and sports car manufacturer owned by Pierer Mobility AG and Indian manufacturer Bajaj Auto. Formed in 1992, KTM is known for its off-road motorcycles and expanded into street motorcycle production. KTM AG is the official source of KTM products including the following:

https://www.ktm.com/en-us/parts---wear/powerwear/products.html



5. KTM AG is the owner of the following trademark registrations for the KTM trademark:

Trademark Registration Nos. 3606168, 3547084, 3440999, 3436150 and 4650809.

The above registrations for KTM are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the above KTM Trademarks are attached hereto as Exhibit 1.

6. The KTM Trademarks are distinctive and identify the merchandise as goods from KTM AG.

7. The KTM Trademarks have been continuously used and never abandoned.

8. KTM AG has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the KTM Trademarks. As a result, products associated with the KTM Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from KTM AG.

9. The success of the KTM brand has resulted in its significant counterfeiting. Consequently, KTM AG is implementing an anti-counterfeiting program and is investigating suspicious websites and online marketplace listings identified through external vendors in proactive Internet sweeps. KTM AG has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A which is attached to the Complaint (collectively, the "Defendant Internet Stores"), which were offering for sale, selling, and importing counterfeit products in connection with counterfeit versions of KTM AG's federally registered KTM Trademarks (the "Counterfeit KTM Products") to consumers in this Judicial District and throughout the United States. Despite KTM AG's enforcement efforts online, Defendants have persisted in creating the Defendant Internet Stores.

10. At KTM AG, we perform, supervise, and/or direct investigations related to Internet-based infringement of the KTM Trademarks. Our investigation shows that Defendants are using the Defendant Internet Stores to sell Counterfeit KTM Products from foreign countries such as China to consumers in the U.S. and elsewhere. We, or

someone working under our direction, analyzed each of the Defendant Internet Stores and determined that Counterfeit KTM Products were being offered for sale to the United States, including Illinois. This conclusion was reached through visual inspection of the products listed for sale on the website, the price at which the Counterfeit KTM Products were offered for sale, other features commonly associated with websites selling counterfeit products, because Defendants offered shipping to the United States, including Illinois, and because Defendants and their websites do not conduct business with KTM AG and do not have the right or authority to use the KTM Trademarks for any reason. True and correct copies of screenshot printouts showing the active Defendant Internet Stores reviewed are attached as Exhibit 2.

11. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers selling genuine KTM Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon and PayPal. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. KTM AG has not licensed or authorized Defendants to use its KTM Trademarks, and none of the Defendants are authorized retailers of genuine KTM Products.

12. Upon information and belief, Defendants also deceive unknowing consumers

4

by using the KTM Trademarks without authorization within the content, text, and/or meta tags of their web sites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for KTM Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine KTM Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down.

13. Defendants often go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant Domain Names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

14. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit KTM Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being

5

counterfeit to one another, suggesting that the Counterfeit KTM Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HADJL user- defined variables, domain redirection, lack of contact information, identically or similarly priced similar hosting services, similar name servers, and the use of the same text and images.

15. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

16. Counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as Amazon and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of KTM AG's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.

17. Monetary damages alone cannot adequately compensate KTM AG for ongoing infringement because monetary damages fail to address the loss of control of and damage to KTM AG's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to KTM AG's reputation and goodwill by acts of infringement.

18. KTM AG's goodwill and reputation are irreparably damaged when the KTM Trademarks are used on goods not authorized, produced, or manufactured by KTM AG. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to KTM AG's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

19. KTM AG is further irreparably harmed by the unauthorized use of the KTM Trademarks because counterfeiters take away KTM AG's ability to control the nature and quality of products used with the KTM Trademarks. Loss of quality control over goods using the KTM Trademarks and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

20. The sale of Counterfeit KTM Products using the KTM Trademarks also causes consumer confusion, which weakens KTM AG's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit KTM Products they have purchased originated from KTM AG will come to believe that KTM AG offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine KTM Products,

resulting in a loss or undermining of KTM AG's reputation and goodwill. Counterfeit KTM AG Products, primarily coming from China can be extremely dangerous and present alarming safety hazards to children.

21. KTM AG is further irreparably damaged due to a loss in exclusivity. The KTM Products are meant to be exclusive. KTM AG's extensive marketing and distribution of KTM Products are aimed at growing and sustaining sales of KTM Products. The KTM Trademarks are distinctive and signify to consumers that the products originate from KTM AG and are manufactured to KTM AG's high quality standards. When counterfeiters use the KTM Trademarks on goods without KTM AG's authorization, the exclusivity of KTM AG's products, as well as KTM AG's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

22. KTM AG will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 7, 2021.

..................................................
Hubert Trunkenpolz

..................................................
Viktor Sigl

8