IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KTM AG,<br><br>                  Plaintiff,<br><br>    vs.<br><br>The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto,<br><br>                  Defendants. | Case No. 21-cv-1279<br><br>Hon. Robert M. Dow, Jr. |

MOTION TO DISMISS

Defendant Harvest Innovation Global Ltd, identified in "Schedule A" as "Defendant No. 115" and nowhere else in KTM's complaint, moves to dismiss KTM's "Schedule A" complaint[1] for improper service, for failing to state a claim, and for improper joinder. In support of its motion, it states as follows:

1. As explained more fully below, not even once in KTM's 16-page complaint does it ever mention Harvest Inn or explain in any way what it alleges that Harvest Inn did. Instead, it simply

---

[1] The background and general description of the controversial so-called "Schedule A" lawsuits is described at length in *Oakley, Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 21 C 536 Jan. 30, 2021 (Kennelly, J.) ("It has become commonplace in this district for holders of trademark and trade dress rights to file suits naming dozens or even hundreds of claimed infringers and counterfeiters, alleging that they are selling knock-off products via the Internet. The plaintiffs seek an injunction and recovery of damages. In these lawsuits, the actual identities and locations of the sellers are unknown to the trademark holder because they have used assumed names. The lawsuits are typically filed against a group of sellers whose assumed names are listed on an attachment to the complaint, usually called "Schedule A.") (available at https://bit.ly/3fmWBsX (last visited May 26, 2021); *see also H-D U.S.A., LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-01041, 2021 U.S. Dist. LEXIS 37600, at *5 (N.D. Ill. Mar. 1, 2021) (describing the burden on the courts and harm to taxpayers of the so-called "Schedule A" lawsuits).

lumps Harvest Inn with every one of the other of the hundred-plus defendants and even smears Harvest Inn by lumping it in with an entire Chinese counterfeiting industry.

## BACKGROUND

2. Harvest Inn is a Hong-Kong-based online retailer, operated by entrepreneur Yu Pui Ming.[2] Harvest Inn received notice from Amazon.com sometime in early May 2021 that its selling page for one of its many products would be deactivated because of this Court's Temporary Restraining Order. Harvest Inn sells thousands of products online in the Amazon Marketplace, many under its registered Trademark KETABAO, for which it owns a United States Trademark registration (Reg. No. 5,935,830).

3. Amazon.com also indicated that Harvest Inn's entire seller's account is now frozen under a TRO, not just amounts tied to any allegedly-infringing products. Amazon.com indicated that it would not hear any appeal of this decision and encouraged contact directly with Plaintiff's counsel.

4. None of the above facts are included in KTM's complaint and are thus for background only and not before the Court on this motion.

---

[2] The facts set forth here are purely for background purposes. As a motion to dismiss does not consider matters outside the four corners of the complaint, Harvest Inn has not here provided a supporting declaration. Its motion is based solely on what is – or more accurately, what is not – alleged in KTM's complaint.

## The Allegations of KTM's Complaint

5. KTM's complaint (ECF No. 1) never mentions Harvest Inn beyond identifying it in "Schedule A" as "No. 115." There is not a single paragraph or sentence within any paragraph that mentions "Harvest Inn," "Defendant No. 115," or in any way alleges what specifically Harvest Inn did.

6. The Complaint is devoid of any instance of Harvest Inn allegedly using the KTM mark or any marked owned by KTM in any way – allegedly infringing or otherwise.[3] Instead, KTM lumps Harvest Inn together with all of the other defendants and treats them as one, frequently avoiding any facts and falling back on "information and belief" allegations applicable to "defendants," "many of the defendants," and referring to things "upon information and belief" that defendants "often" do. *See, e.g.*, Compl. ¶ 16.

7. The complaint also contains numerous allegations about counterfeit goods supplied from China, and "tactics" of Chinese companies to target the United States and conceal their plans. The Complaint, however, does not specify a particular fact about Harvest Inn that, if taken as true, plausibly alleges trademark infringement.

8. Beyond these general conclusory statements about "defendants," there is nothing pertaining to Harvest Inn that informs Harvest Inn the nature of the complaint against it specifically.

---

[3] Harvest Inn qualifies its statement "or otherwise" above because simply mentioning KTM while selling non-KTM branded products does not inevitably mean that there is trademark infringement. The Lanham Act does not prohibit all use of another's trademark in connection with the sale of goods or services. It is likely that Harvest Inn would be able to state strong and meritorious fair use defenses given the overall nature of its business on its Amazon storefront. These defenses, however, are not part of this motion, as it would be guesswork on Harvest Inn's part as to what products or listings KTM has issues with since nothing is contained in the Complaint.

9. In Count I, KTM purports to allege trademark infringement and counterfeiting under 15 U.S.C. § 1114, but states no facts or grounds when it alleges (¶ 28) that "Defendants" are commercializing "products in connection with Plaintiff's Trademarks without Plaintiff's permission."

10. Count II purports to allege false designation of origin under 15 U.S.C. § 1125(a), but states no facts or grounds when it alleges (¶ 34) "Defendants'" various activities "have created and are creating a likelihood of confusion, mistake, and deception among the general public" as to approval of products by Plaintiff.

11. Count III purports to allege violation of Illinois prohibitions against deceptive trade practices, but states no facts or grounds when it alleges (¶ 39) that "Defendants" committed various "acts violating Illinois law" that create likelihood of confusion or misunderstanding among the public about affiliation, connection, association or sponsorship of products.

## IMPROPER SERVICE

12. The Court should dismiss Harvest Inn because it has not been properly served, thus depriving this Court of jurisdiction over it.[4]

13. Every defendant must be served with a copy of the complaint and summons in accordance with Rule 4. Fed. R. Civ. P. 4(b), 4(c)(1). Only proper service vests a district court with personal jurisdiction over a defendant. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). Thus, "actual knowledge of the existence of a lawsuit is insufficient to confer personal

---

[4] It is likely that this Court also lacks personal jurisdiction over Harvest Inn as it lacks minimum contacts with Illinois. KTM alleges in the same conclusory fashion what "defendants" do, but does not make any allegations against Harvest Inn in this respect. KTM does not allege that there is general jurisdiction over Harvest Inn. Based on the lack of any specifics in the complaint, disproving specific jurisdiction – *i.e.*, that KTM's suit arises out of anything connected to Illinois is challenging because the Complaint does not say specifically what Harvest Inn has done that KTM believes its suit "arises out of." Harvest Inn reserves the right to challenge personal jurisdiction if KTM ever pleads any facts about Harvest Inn.

jurisdiction over a defendant in the absence of valid service of process." *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991).

14. Plaintiffs bear the burden to show proper service. Under Rule 12(b) (4 and 5), the plaintiff has the burden to prove that the defendant was properly served such that the court obtained personal jurisdiction. *Cardenas*, 646 F.3d at 1005 (*citing Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005)).

15. Federal Rule of Civil Procedure 4(f) governs service of a corporation not at a place within the United States. Fed. R. Civ. P. 4(h)(2). Rule 4(f) authorizes two methods of service at issue here. First, service may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ." Fed. R. Civ. P. 4(f)(1). Second, Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders." The TRO authorizing e-mail service did not comply with Rule 4(f)(3) because neither method has been satisfied.

16. The Hague Service Convention was intended to simplify and standardize serving process abroad, and "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) (*quoting Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)). The "primary innovation" of the Convention is the requirement that each member nation designate a central authority to receive service of process. *Schlunk*, 486 U.S. at 698.

17. The Convention authorizes service by certain other means, but it does not speak directly to service by email and other electronic means. *See Water Splash*, 137 S. Ct. at 1508 (discussing means of service authorized by the Convention).

5

18. The Hague Convention applies here and there is no dispute that KTM has not complied with the Hague Convention's requirements. The exception, which some "Schedule A" plaintiffs have argued for, does not apply as noted below.

19. Courts look to Article 1 to determine whether the Hague Service Convention applies. Article 1 specifies the Hague Service Convention's scope. *Id.* at 699. The first sentence says that the "Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Id. (*quoting* Article 1 of the Hague Service Convention, 20 U.S.T. at 362). An exception, inapplicable here, could apply when "the address of the person to be served with the document is not known." Art. 1, 20 U.S.T. at 362. That exception is inapplicable because KTM could not have investigated Harvest Inn's mailing addresses with the diligence the Hague Service Convention requires.

20. It is incredible to argue that Harvest Inn's whereabouts was "not known" for purposes of the Hague Convention. Despite claiming to this Court in its TRO papers that "Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit KTM Products." (KTM's Brief In Supp. of TRO Motion at 22 (ECF 9).

21. Harvest Inn's physical address is listed on its Amazon Seller page as shown below:[5]



---

[5] Available at http://bit.ly/HarvestInnStorefront (last visited May 28, 2021).

6

22. It is the same address used to obtain its U.S. Trademark in KETABAO, the brand name under which it sells many of its products as shown below on its Registration from the USPTO.[6]





Reg. No. 5,935,830
Registered Dec. 17, 2019
Int. Cl.: 12
Trademark
Principal Register

HARVEST INNOVATION GLOBAL LIMITED (HONG KONG limited company (ltd.))
Flat C 12/f Wai Cheung Industrial Centre
5 Shek Pai Tau Road Tuen Mun,
New Territories, HONG KONG

CLASS 12: Anti-theft devices for vehicles; Bicycle parts, namely, forks; Bicycle pedals; Disc brake pads for vehicles; Fitted covers for vehicles; Holder used to mount a surfboard to a motorcycle; Inner tubes for aircraft tires; Insignia for vehicles; Metal parts for vehicles, namely, automotive exterior and interior metal decorative and protective trim; Mirrors for vehicles, namely, rear view and vanity mirrors; Motor cycles; Motorcycle accessories, namely, gas tank and radiator shrouds; Motorcycle kickstands; Motors, electric, for land vehicles; Panniers adapted for motorcycles; Parts of motorcycles, namely, brake levers; Parts of motorcycles, namely, fork bearings and races; Parts of motorcycles, namely, headlight mounts; Push scooters and structural parts therefor; Structural parts for buses

FIRST USE 2-26-2018; IN COMMERCE 3-26-2018

The mark consists of wording "KETABAO" in a stylized form, in which there is a wolf pattern in front of the words. The color black represents background, outlining, shading and/or transparent areas and is not part of the mark.

The wording "KETABAO" has no meaning in a foreign language.

SER. NO. 88-356,207, FILED 03-26-2019



Andrei Iancu
Director of the United States
Patent and Trademark Office



23. Courts have interpreted the second sentence of Article 1 consistently. A plaintiff cannot close its eyes to the obvious to avoid the Hague Service Convention; the plaintiff must make

---

[6] Available at:
https://tsdr.uspto.gov/documentviewer?caseId=sn88356207&docId=ORC20191201023336#docIndex=0&page=1 (last visited May 28, 2021)

7

reasonably diligent efforts to learn the defendant's mailing address. *See, e.g., Advanced Access Content Sys. Licensing Admin., LLC v. Shen,* 2018 WL 4757939, at *4-5 (S.D.N.Y. Sept. 30, 2018); *Progressive Se. Ins. Co. v. J & P Transp.,* 2011 WL 2672565, at *3 (N.D. Ind. July 8, 2011) (*citing Opella v. Rullan,* 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011)); *Compass Bank v. Katz,* 287 F.R.D. 392, 394-95 (S.D. Tex. 2012) (collecting and discussing cases).

24. Judge Gottschall, facing a nearly identical issue reached the same conclusion as urged here – namely, that service of process was invalid because it failed to comply with the requirements of the Hague Convention and the defendant's adrdress was reasonably known. *See Luxxotica Group S.p.A. v. "Schedule A",* 391 F. Supp. 3d 816 (N.D. Ill. May 24, 2019). In *Luxottica,* Judge Gottchall was dealing with Chinese defendants challenging process. Harvest Inn is a resident of Hong Kong, which is also a signatory to the Hague Convention. *See Judicial Assistance Country Information,* U.S. State Department, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/HongKong.html (last visited May 28, 2021), so the same analysis applies here.

25. In *Luxottica,* Judge Gotschall concluded that the Hague Convention regarding service of process was applicable and should be followed even with considerable confusion regarding the ability to easily locate a physical address. In addressing the ease of locating a physical address, Judge Gotchall lamented that "[t]he parties have not directed to the [C]ourt to a screenshot listing a . . . physical address for the defendants." *Id.* at 822.

26. Despite these difficulties, because the Hague Convention applied and the plaintiff had not followed it, the Court dismissed the moving defendant. *Id.* The Court rejected arguments that service by email was permitted. *Id.*

27. Here, Harvest Inn has provided screen shots showing its physical address both on Amazon and in the United States Patent and Trademark Office. The facts here present an even

8

stronger case that the plaintiff did not act reasonably diligently in determining whether Harvest Inn could be served through proper channels.

28. KTM's statement that "Defendant's" activities "make it virtually impossible for Plaintiff to discover the true identities of the Defendants," (KTM's TRO Brief at 9) (ECF No. 9), is highly misleading at least with respect to Harvest Inn.

29. Because the Hague Convention applies here for service of process and KTM has failed to comply with its requirements, this Court should dismiss Harvest Inn based on improper service of process. *Luxottica*, 391 F. Supp. 3d at 827-28.

## FAILURE TO STATE A CLAIM

30. As an additional basis for dismissal, the Complaint as to Harvest Inn fails to state a claim under *Twombly/Iqbal.*

31. When deciding a motion to dismiss under Rule 12(b)(6), this Court accepts as true all well-pleaded factual allegations in the complaint and draws inferences in a light most favorable to the plaintiff. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The analysis with respect to the Lanham Act claims is equally applicable to the state-law claims as the argument is not based on the substantive elements of the claims, but on a failure to provide notice under Rule 8.

32. Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 550, 555 (2007), (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further

9

factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

33. To survive a motion to dismiss, the Plaintiff who has sued multiple defendants must identify allegations as to the specific moving defendant and support its claim factually with respect to that individual defendant. The "Seventh Circuit . . . require[s] that a plaintiff structure her complaint such that each individual defendant knows what it did that allegedly harmed the plaintiff." *See, e.g., Paulsen v. Abbott Labs.*, 368 F. Supp. 3d 1152, 1171 (N.D. Ill. 2019) (Dow, J.); *see also, Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("The Rules of Civil Procedure set up a system of notice pleading. Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed.")

34. A complaint for trademark infringement must identify not only the marks in question, but what the Defendant did specifically that the plaintiff believes was infringing. *See, e.g., Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 865 (N.D. Ill. 2009) (Leinenweber, J.) (dismissing Lanham Act claims against "defendants" because the complaint did not "identify any specific act of infringement by any single Defendant or any service rendered, or product provided by any single Defendant").

35. In *Specht*, the plaintiff alleged trademark infringement against Google and a host of other defendants. Judge Leinenweber rejected a motion to dismiss by Google, finding that the plaintiff had alleged facts specific to Google's actions. *Id.*

36. With regard to the other 48 corporate defendants, however, the Court granted the motion, stating that the allegation that "defendants" "infringed on Plaintiffs' trademark by using the mark in promotional materials in order to sell 'goods or services,'" was conclusory and insufficient under the *Twombly/Iqbal* standard. *Id.*

37. Judge Leinenweber stated that:

The [first amended complaint] fails to make any distinction among the 48 Corporate Defendants; rather, it consists of vague allegations "on information and belief" with no factual specifics. Plaintiffs treat the numerous Defendants (other than Google) as a collective whole and do not identify any specific act of infringement by any single Defendant or any service rendered or product provided by any single Defendant. *Id.*

38. As in *Sprecht*, KTM here makes only vague allegations, often "on information and belief" without factual specifics. Likewise, KTM also treats every defendant as a collective whole and does not identify any specific act of infringement by any single defendant in the Complaint. KTM also fails to identify any service or product offered by any Defendant, including Harvest Inn.

39. Plaintiffs' conclusory legal claims against unspecified Defendants fall short of the requirement that a complaint cite supporting facts to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the defendant-unlawfully harmed me accusation. Naked assertions [absent] further factual enhancement" are insufficient.).

40. As to Harvest Inn, the Complaint contains only "labels and conclusions, and a formulaic recitation of the elements of" trademark (and analogous state-law) causes of action against "defendants" collectively. The Complaint does not recite anything for relief against Harvest Inn specifically. Indeed, as noted above, there are no specific allegations as to what Harvest Inn supposedly did. As in *Specht,* this Court should dismiss Harvest Inn because KTM has failed to state a plausible claim against it.

## MISJOINDER

41. Harvest Inn should also be dropped as a party from this action because it has been improperly joined as a defendant.

42. Under Federal Rule 20(a)(2) parties "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any

11

question of law or fact common to all defendants will arise in the action." As the Seventh Circuit has stated, "[A] litigant cannot [generally] throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012).

43. The plaintiff bears the burden of demonstrating that joinder is proper under Federal Rule of Civil Procedure 20(a)(2). *Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Associations Identified on Schedule "A"*, 334 F.R.D. 182, 185 (N.D. Ill. 2020) (citing, *inter alia*, *In re Veluchamy*, 879 F.3d 808, 819 n.4 (7th Cir. 2018) (applying Rule 19 mandatory-joinder requirement and stating: "we confirm that in this Circuit the party advocating for joinder generally has the initial burden to establish the absent person's interest"); *Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010) (explaining that complaint in prior case had been rejected because "the plaintiff had made no effort to show how his joinder of claims satisfied Rule 20")).

44. When a defendant is improperly joined this Court may drop the misjoined party. *See, e.g., DirecTV, Inc. v. Perez,* No. 03 C 3504, 2003 U.S. Dist. LEXIS 20269, at *5 (N.D. Ill. Nov. 10, 2003) (Coar, J.) ("when DirecTV filed these lawsuits, it was aware (or at least it should have been aware) that its strategy of joining unrelated defendants in the same lawsuit carried with it a risk that the suits would be dismissed without prejudice for improper joinder under Rule 21.")

45. "Courts within this District have held that it is not enough for a plaintiff to simply allege that multiple defendants have infringed the same patent or trademark to meet Rule 20's requirements." *H-D U.S.A., supra,* 2021 U.S. Dist. LEXIS 37600, at *5 (citing *Estée Lauder*, 334 F.R.D. at 187; *Slep-Tone Entm't Corp. v. Roberto*, 2013 U.S. Dist. LEXIS 151923, (N.D. Ill. Oct. 22, 2013); *ThermaPure, Inc. v. Temp-Air, Inc.*, 2010 U.S. Dist. LEXIS 136262, at *4 (N.D. Ill. Dec. 22, 2010); *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 U.S. Dist. LEXIS 90549 (N.D. Ill. Sept. 1, 2010); *SB Designs v. Reebok Int'l, Ltd.*, 305 F. Supp. 2d 888, 892 (N.D. Ill. 2004)).

46. In *H-D U.S.A.*, Judge Aspen raised the issue of joinder *sua sponte*. The Court noted that the complaint's allegation that the "Schedule A" defendants:

> are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Harley-Davidson Products in the same transaction, occurrence, or series of transactions or occurrences"

was conclusory, not factual and thus could not be credited. *Id.*

47. Examining the alleged facts rather than the conclusory statements, the Court shot down the argument that alleging infringement of the same marks amounted to the same "transaction or occurrence." *Id.* The Court found that it was improper to join 198 defendants who were not in any way connected other than to have allegedly infringed in some way one or more of the plaintiff's registered trademarks. *Id.*

48. As in HD-U.S.A., KTM cannot satisfy the first requirement for Rule 20. It is not seeking relief against the 147 defendants named in the complaint jointly, severally, or arising out of the same transaction, occurrence, or series of transactions or occurrences. As in the H-D case, KTM makes a similarly conclusory allegation that they do. *See* Compl. ¶ 4.

49. Harvest Inn has been misjoined. KTM has done nothing more than "simply allege that multiple defendants have infringed the same . . . trademark." As courts have repeatedly held, this is simply not enough for joinder under Rule 20.

## CONCLUSION

For the foregoing reasons, Harvest Innovation Global Ltd. respectfully requests that the Court dismiss it as a defendant in this matter.

Dated:   May 28, 2021

> Respectfully submitted,
> /s/ Michael La Porte
> Michael R. La Porte (mrl@fg-law.com)
> FLACHSBART & GREENSPOON, LLC
> 333 N. Michigan Avenue, Suite 2700
> Chicago, IL  60601
> T:  312-551-9500
>
> Attorneys for Defendant,
> Harvest Innovation Global, Ltd.

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on counsel of record who have filed appearances *via* the ECF.

I have not served any other party under Rule 5(a)(1)(D) because the e-mail addresses KTM has used to serve these absent defendants has not been provided to Harvest Inn and is not a matter of public record.