IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KTM AG, <br><br> Plaintiff <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A "A", including HARVEST INN, <br><br> Defendants. | 21 cv 1279 <br><br> The Hon. Robert M. Dow, Jr. |

HARVEST INNOVATION GLOBAL LTD'S
MEMORANDUM OF LAW IN OPPOSITION TO
KTM'S MOTION FOR PRELIMINARY INJUNCTION

Courts routinely describe the request for preliminary injunctive relief as an "extraordinary" remedy requiring stringent proofs. Courts require movants to marshall evidence in support of their claims to satisfy the "likelihood of success" prerequisite to relief and warn movants that they must do more than simply meet the "plausibility" standard for stating a claim. Notwithstanding the high bar to relief, KTM "phoned it in," submitted a thin, four-page brief in support of its motion, the main argument of which is "the requirements for entry of a preliminary injunction have [already] been satisfied."[1] KTM is wrong. For the reasons stated more fully below, Harvest Innovation Global Ltd, d/b/a "Harvest Inn" (hereinafter "Harvest Inn") opposes KTM's motion and respectfully suggests that KTM has failed to meet its heavy burden of showing entitlement to the "extraordinary remedy" it seeks. KTM's motion should therefore be denied.

---

[1] Mem. Of Law in Supp. of Pl's Mot. for Entry of a Preliminary Injunction (hereinafter "KTM's Brief") (ECF No. 27) at 3.

## INTRODUCTION

Harvest Inn is a Hong-Kong-based online retailer. *See* Harvest-Inn Amazon Storefront (available at http://bit.ly/Harvest-Inn) (last visited May 28, 2021). Harvest Inn offers for sale more than 1000 products on Amazon. *See id.* It derives revenue from the sale of these products, which all receive payments through Amazon and move into a single, central account. Harvest Inn sells a variety of KETABAO-branded products that mention "KTM" to describe the interoperability of its parts and/or fitness for use on KTM motorcycles. These are all fair uses under the Lanham Act under the doctrine of "nominative fair use." Neither the complaint nor the preliminary injunction motion (or any of the supporting papers filed with the motion) identify any product sold or offered for sale by Harvest Inn that is supposedly the basis for its complaint, which is the only basis for requesting preliminary injunctive relief.[2]

As noted above, Harvest Inn sells many of its online products under its own brand name "KETABAO," for which it owns a United States trademark registration. (U.S. Reg. No. 5935830). The "drawing" of the mark as registered is shown below:



Harvest Inn uses this and variations of this mark in connection with its online sales.

---

[2] Harvest Inn is aware that certain other defendants have opposed KTM's motion for preliminary injunction on grounds of nominative fair use, among other things (ECF No. 32). While Harvest Inn generally agrees with the position taken by those defendants and might argue for a nominative fair use defense had KTM identified any of Harvest Inn's KETABAO products. If KTM is given leave to re-plead and does so providing facts related to Harvest Inn, it will evaluate those allegations and respond accordingly. Since the Complaint does not identify any product or product offering, Harvest Inn will not make up claims for KTM just to refute them.

Like other plaintiffs filing "Schedule A" lawsuits, KTM has sought to lump countless foreign defendants together in one lawsuit and quickly seek equitable relief not merely to stop alleged infringement, but also to freeze these foreign defendants financial accounts with Amazon or PayPal.[3] Often – as was likely the case here – the amounts frozen are orders of magnitude larger than even the gross sales of allegedly-infringing products. *Id.* Once frozen, plaintiffs like KTM then count on the fact that most defendants are small, mom-and-pop shops that cannot afford to retain United States attorneys to defend them. Or, these foreign defendants simply realize that the cost of defense will frequently be as large or larger as even the amounts frozen. As a result, the trademark owner then seeks default against non-appearing defendants and requests a turn-over order, often without any proof of damages, effectively stealing money from these absent defendants. *Id.*

KTM sued not only Harvest Inn, but also 146 others in "Schedule A." In the loosest way, KTM claims that all defendants are in cohoots. *See, e.g.* Compl. ¶ 4. Each defendant appears to operate online stores that sell, among other things, motorcycle parts or related merchandise. But the Complaint does not explain with any facts how the defendants are supposedly connected or what any of the defendants do other than allegedly "infringe" one or more of KTM's trademarks or allegedly "counterfeit" KTM products.[4]

Based on the thin allegations in the complaint, KTM obtained an *ex parte* under-seal temporary restraining order. (ECF No. 20). This Court extended that order an additional 14 days to May 26, 2021, when it expired by its terms an under the Federal Rules. *See Minute Entry* (ECF No. 30); Fed. R. Civ. P. 65 (prohibiting a TRO from lasting more than 28 days without consent).

---

[3] *See, e.g., Patent Holder Identified in Exh. 1 v. Does*, No. 21 cv 514, 2021 U.S. Dist. LEXIS 22863 (Feb. 6, 2021) (Judge Kennelly describing "Schedule A" lawsuits).
[4] Harvest Inn has also filed today a motion to drop it as a defendant based on improper joinder.

3

For its present motion for a preliminary injunction, KTM presents no evidence specific to Harvest Inn, but instead relies on the fact of this Court granting its TRO motion. *See* Mem. In Supp. of Prelim. Injunct. (ECF No. 26) (by "virtue of this Court's entry of the TRO, it has already found that the above requirements have been satisfied.") It makes no attempt beyond this to shoulder the heavy burden that it must carry to be granted such relief.[5] The overwhelming majority of its brief is devoted not to arguing that it is likely to succeed on the merits but instead asking this Court to rubber stamp its prior order and suggesting that the prior requested relief "remains appropriate."

### BURDEN OF PROOF FOR TRADEMARK PRELIMINARY INJUNCTIONS

A preliminary injunction will be granted only "upon a clear showing that the plaintiff is entitled to such relief."[6] Stating a claim for relief under Rule 12 is a necessary, but not sufficient prerequisite to obtaining preliminary injunctive relief. A plaintiff that fails to meet the *Twombly/Iqbal* threshold cannot show a likelihood of success on those claims.[7] As the Court stated in *J.O.P.*, a

---

[5] Any other issues or arguments not raised in KTM's brief are waived under Seventh Circuit law. "[A]rguments raised for the first time in a reply brief are waived." *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) (citations omitted); *see also Mylan Laboratories, Ltd. v. United States FDA*, 910 F. Supp. 2d 299, 312 (D.D.C. 2012) (finding waiver of arguments raised for the first time in a reply in support of motion for preliminary injunction, but not raised in the opening brief). KTM's waiver of many issues is discussed in more depth in the concluding section of this opposition brief.

[6] *J.O.P. v. United States Dep't of Homeland Security*, No. GJH-19-1944, 2020 U.S. Dist. LEXIS 239695, at *66-67 (D. Md. Dec. 21, 2020) (*quoting Winter v. Nat'l Resources Defense Council*, 555 U.S. 7, 22 (2008)).

[7] *See, e.g., Saud v. DePaul Univ.*, No. 19 C 3945 (N.D. Ill. Oct. 29, 2019) (Dow, J) (8 of 9 claims dismissed under 12(b)(6) cannot show likelihood of success); *Spiegel v. McClintic*, No. 16 C 9357 (N.D. Ill. Sep. 27, 2017) (denying motion for preliminary injunction by plaintiffs where claims were dismissed by motion under Rule 12(b)(6)).

4

movant must do more and *merely* meeting the bare threshold required by *Twombly* and *Iqbal* is insufficient.[8] It is the movant's burden to show that such extraordinary relief is appropriate.[9]

Thus, the burden placed upon Plaintiffs to show that each requirement of a preliminary injunction is met is high. Parties seeking such relief face a heavy burden and must make a threshold showing that:

(1) absent preliminary relief, [it] will suffer irreparable harm in the interim prior to a final resolution;

(2) there is no adequate remedy at law; and

(3) [it] has a reasonable likelihood of success on the merits.[10]

If the movant makes this threshold showing, this Court then proceeds "to consider the balance of harm between the parties and the effect of granting or denying a preliminary injunction on the 'public interest.'"[11] Courts use "a sliding scale approach: the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor" and *vice versa*.[12]

## ARGUMENT

KTM is not entitled to preliminary injunctive relief. It's motion and supporting brief are devoid of any legal argument on most points and instead is a half-hearted request for a rubber stamp and extension of this Court's previously-entered TRO. Because there are no facts alleged specifically

---

[8] *Id.* This is significant insofar as Harvest Inn has today also moved to dismiss KTM's complaint against it under Rule 12 for failing to meet the *Tombly/Iqbal* bare minimum of pleading requirements. KTM's complaint is deficient and it does not provide any further evidentiary support for its motion here.

[9] *E.g., Speech First, Inc. v. Killeen*, 968 F.3d 628, 638-39 (7th Cir. 2020) (*citing Courthouse News Serv.*, 908 F.3d at 1068 (*citing Mazurek v. 638\*638 Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).

[10] *Id.* at 612-13. Although movants sometimes claim that showing a "better than negligible" chance of success is all that is required, the Supreme Court rejected the "better than negligible" standard in *Nken v. Holder*, 556 U.S. 418 (2009); *see also Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020).

[11] *Id.*

[12] *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018).

5

against Harvest Inn, it makes responding to KTM's arguments rhetorically difficult. But legally, Harvest Inn is not required to defend the conduct alleged against all "defendants" but only those things that KTM alleges that Harvest Inn did. The Complaint and KTM's motion here are devoid of any such facts. As a result, KTM has failed to carry the heavy burden of showing entitlement to relief.

I.     **KTM Has Failed to *Show* Irreparable Harm Warranting the Requested Injunctive Relief.**

KTM has failed to argue or put forth any evidence regarding irreparable harm with respect to Harvest Inn. Not only has KTM not alleged any conduct by Harvest Inn specifically, but it also failed to argue in its brief that it has been irreparably harmed.[13] Having failed to put forth any argument or evidence on this point – a point that many courts call the most or among the most important – KTM's motion should be denied.

II.     **KTM Is Not Likely to Succeed on its Trademark Claims Because It Has Failed to State a Claim for Relief.**

KTM has also failed to make any argument or put forth any evidence regarding the likelihood of succeeding in any claim against Harvest Inn. As set forth in Harvest Inn's motion to dismiss (also filed today) KTM has not even met the *Twombly/Iqbal* standard under Rule 8 and thus its complaint should be dismissed. As courts have noted, there can be no likelihood of success if a complaint is dismissed under Rule 12.[14]

Beyond this, KTM has not even tried to show a likelihood of success in any claims against Harvest Inn. The preliminary injunction motion does not ever mention Harvest Inn and does not contain any section regarding likelihood of success. By failing to support is motion with any evidence

---

[13] *See, e.g.*, KTM Brief at 3-5.
[14] *See, e.g., Saud*, supra (8 of 9 claims dismissed under 12(b)(6) cannot show likelihood of success); *Spiegel v. McClintic, supra* (denying motion for preliminary injunction by plaintiffs where claims were dismissed by motion under Rule 12(b)(6)).

or argument, KTM has waived this point.[15] As a result of both the pleading deficiency and its waiver, KTM's motion should be denied.

### III. The Balance of the Harms Favors Harvest Inn and the Consuming Public or is At Best Neutral.

KTM has likewise failed to show that the balance of harms favors it. As with irreparable harm and likelihood of success, KTM does not even attempt to provide evidence or argument on this point. Courts typically will not even evaluate a balancing when a movant has not met its burden on the irreparable harm and likelihood of success elements. But even if this Court were to examine this element, it like the others has been waived and cannot be found to favor KTM.

### IV. KTM's Collateral Estoppel-like Arguments are Bordering on Frivolous.

The only argument that KTM makes in favor of its motion is that this Court has already granted a TRO and the elements for TROs and preliminary injunctions are the same. This quasi-collateral-estoppel argument, however, is nonsensical for a host of reasons.

First, the cases that KTM do not support this proposition. KTM claims that the cited cases "issued preliminary injunctions following a temporary restraining order." KTM Brief. At 3. But the two cited decisions were granting *ex parte* TRO motions,[16] not opposed preliminary injunction motions. The fact that *may* have later issued such orders also does not support its argument and leads to the second point.

---

[15] *See, e.g., Judge v. Quinn,* 612 F. 3d 537,557 (7th 2010) ("[i]t is not the obligation of th[e] court to research and construct legal arguments open to parties, especially when they are represented by counsel . . . perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citations omitted).

[16] The *Charter Nat'l Bank & Trust v. Charter One Fin., Inc.* case that KTM cites later was also decided on a motion for TRO and was not a preliminary injunction case. It should do without saying that nothing in that case suggests that by granting a TRO, the movant was automatically entitled to a preliminary injunction.

Second, because courts sometimes *do* enter preliminary injunctions after granting TROs does not mean that they must. It also does not mean that prior granting of a TRO relieves a party of the burden of proving entitlement to a preliminary injunction. KTM ignores the countless number of cases in which a court first granted an *ex parte* TRO but then denied a motion for preliminary injunction.[17] Indeed, KTM ignores that the Federal Rules of Civil Procedure expressly contemplate scenarios in which a TRO will be granted only later to be dissolved, or no further preliminary relief granted.[18] Rule 65(c) regarding security upon getting a TRO would not be necessary if granting a TRO meant that a preliminary injunction would inevitably follow.

KTM has not supported its argument that the prior TRO should carry its burden on its motion for preliminary injunction. KTM as the movant and party requesting "extraordinary relief" bears that burden. It has not done so. The motion should be denied.

V.     **The Requested Injunctive Relief is Grossly Overbroad.**

If any injunctive relief is warranted – a conclusion that Harvest Inn strongly contests – it must be vastly narrower than the TRO and what is requested here. The requested relief here is in two components, which are addressed below separately. First, KTM asks for injunctive relief concerning the way that Harvest Inn sells its products (hereinafter referred to as the "Lanham Act Injunction"). KTM also seeks an asset freeze to ensure collection of any future judgment (hereinafter the "Asset

---

[17] *See, e.g., Triumph v. Ward*, 834 F. Supp. 2d 796, 800 (N.D. Ill. 2011) (St. Eve, J.) (denying preliminary injunction motion after TRO had been granted); *see also Triumph v. Ward*, No. 11 cv 7927, 2011 U.S. Dist. Lexis 147195 *9 (N.D. Ill. Dec. 22, 2011) (finding that the non-moving party was "wrongfully restrained" by the TRO by virtue of denying the preliminary-injunction motion).

[18] *See* Fed. R. Civ. P. 65(c) (requiring payment of security to compensate for any wrongful restraint by a TRO); *see also LTD Commodities, Inc. v. Perederij*, 699 F. 2d 404 (7th Cir. 1983) (recounting lengthy discussion of the late Judge Shadur with moving counsel including his warning that "if you do not establish your right to get the preliminary injunctive relief [after granting a TRO], then the funds that you have put up, will have put up in substitution for the assets, would simply be released to the defendant here").

8

Freeze"). As shown above, no injunctive relief is warranted. But even assuming for purposes of argument that the prerequisites to relief are met, the requested relief is grossly overbroad.

### A. The Requested Lanham Act Injunction Prohibits Too Much Legitimate Conduct, is Not Warranted, and Would Raise Serious First Amendment Concerns.

Because of KTM's joinder of hundreds of unrelated defendants who have no connection to one another and engage in vastly different online behavior, much of the requested relief makes no sense with respect to the Harvest Inn. The lack of any facts in the Complaint and Preliminary Injunction Motion regarding Harvest Inn leaves it to guess what conduct it complains of here. Nevertheless, the request for things like a "domain name transfer," is too broad for a couple of reasons. First, not every domain name use constitutes trademark infringement.[19] Second, Harvest Inn does not operate under any independent domain names. Third, the "domain" that Harvest Inn operates under is not a "top level domain" that it owns, but instead is sub-domain that Amazon owns and Harvest Inn has no ability to "transfer."

Further, the Lanham Act injunction regarding use of any KTM mark (the gist is contained in paragraph 1(a) of the revised proposed order that KTM submitted to this Court) would enjoin Harvest Inn from:

> using Plaintiff's KTM and DUKE Trademarks or any confusingly similar trademarks or names *in any manner* in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine KTM Product or is not authorized by Plaintiff to be sold in connection with Plaintiff's KTM and DUKE Trademarks

at 3 (emphasis added). As explained below, the scope of this order is fatally overbroad. Granting such relief would be reversable error to the extent that it would cut off and punish fair uses of the KTM marks, including nominative fair uses.

A trademark injunction, particularly one involving nominative fair use, can raise serious First Amendment concerns "because it can interfere with truthful communication between buyers and

---

[19] *See, e.g., Toyota Motor Sales, USA, Inc. v. Tabari,* 610 F. 3d 1171 (9th Cir. 2010).

sellers in the marketplace."[20] Accordingly, courts "must [e]nsure that [the injunction] is tailored to eliminate only the specific harm alleged."[21]

Here, the requested injunction would restrain far too much activity, even assuming that KTM were able to show that any injunctive relief were warranted. Specifically, it would prohibit Harvest Inn Defendants from using the "KTM" or other marks "in any manner," which would necessarily include fair use and specifically, nominative fair use. As the First Circuit noted, such a blanket prohibition would amount to reversible error, even applying a deferential standard of review towards a district court.[22] Flying the face of the First Amendment and doing nothing to advance the aims of the Lanham Act, the requested preliminary injunctive relief would deprive sellers the ability to truthfully communicate that the motorcycle replacement parts that they offer for sale fit certain models of KTM motorcycles, notwithstanding the truth and accuracy of such statements. This is decidedly not in the public's interest.

### B. KTM Failed to Carry Its Burden with Respect to an Asset Freeze.

The second part of KTM's requested relief is also far too broad to be supported by any facts, even assuming the best case for KTM. Courts may enter asset freezes under Rule 65 in cases in equity and related to equitable remedies.[23] Thus, when plaintiffs seek an accounting for profits – an

---

[20] *99*, 610 F. 3d 1171 (9th Cir. 2010) (*citing Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 763–64 (1976); *see also Data Mgt. Ass'n Int'l, v. Enterprise Warehousing Solutions, Inc.*, No. 20 cv 4711, 2020 U.S. Dist. Lexis 242699 *17 (N.D. Ill. Dec. 28 2020).

[21] *Id.* (*citing E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992)).

[22] *See Hypertherm, Inc. v. Precision Prods, Inc.*, 832 F.2d 697 (1st Cir. 1987) (reversing entry of preliminary injunction as an abuse of discretion that prohibited all use of the plaintiffs' mark and noting that "appellant should be able to market [its products] to the trade as being 'compatible with' certain Hypotherm [plaintiff's trademark] machinery, or as being designed to replace specified Hypotherm components.")

[23] *E.g., Johnson & Johnson v. Advanced Inventory Mgmt.*, No 20 cv 3471, 2020 U.S. Dist. Lexis 248831 (Jul. 20, 2020) (Dow, J.) (citations omitted); *see also Spin Master v. Aciper,* 19 cv 6949 (VSB), 2020 U.S. Dist. LEXIS 206278 at *9 (S.D.N.Y. Dec. 4, 2020).

10

equitable remedy under the Lanham Act – they *may* be entitled to such relief.[24] To be proper, an asset freeze needs to be related to and commensurate with the profits for infringing product.[25]

KTM as movant bears the burden of showing not only that it is entitled to such relief, but to show the appropriate amount as an initial matter.[26] The movant's burden is eased by only requiring proof of sales.[27] Once the movant comes forward with such proof, the burden shifts to the non-movant to offset sales with costs and show profits.[28] Easing the burden on movants in this way, however, does not relieve the movant of the burden altogether.[29]

KTM has failed to carry even this lesser burden. There is no evidence of any sales in its motion. Indeed, KTM does not even identify any products either in its motion or in its complaint. KTM was not without the ability to do so. KTM obtained broad relief in its TRO and could easily have also obtained sales information from Amazon based on specific product numbers. Had it done so, the burden would have then shifted to Harvest Inn to offset sales with costs. KTM, however,

---

[24] *CSC Holdings, Inc. v. Redisi*, 309 F. 3d 988 (7th Cir. 2002) (allowing asset freeze on profits obtained on stolen cable television services); *Klipsch Group, Inc., v. Big Box Store Ltd.*, No. 12 Civ. 6283 (AJN), 2012 U.S. Dist. Lexis 153137, *10(SDNY Oct. 24, 2021) ("asset freezes have consistently been confined to preserving the equitable remedy of an accounting for profits.")
[25] *E.g. Spin Master, supra* n. 19 at *9.
[26] *Id.* at *10 (citing *MyWebGrocer,LLC v. Hometown Info, Inc.*, 375 F.3d 190 (2d Cir. 2004); *see also Speech First, Inc.*, 968 F.3d at 638-39.
[27] *Gucci America, Inc. v. Weixing Li*, 768 F. 3d 122, 133 (2d Cir. 2014) (citing 15 U.S.C. § 1117(a)).
[28] *Id.*
[29] *See, e.g., SpinMaster, supra* at *10. KTM should not be heard to argue in reply that it was actually Harvest Inn's burden to come forward with "documentary proof that particular assets [are] not the proceeds of counterfeiting activities." *Johnson & Johnson, infra* at *8. This argument would be wrong under the circumstances here. *See, e.g., Spin Master*, supra at *9. As the Court there noted, the cases supporting the non-movant's specific "documentary proof" standard "involve requests by defendants for relief from asset freezes already imposed by preliminary injunction. *Id.* Although KTM argues in its brief that the "asset restraining order remains appropriate" (Brief at 4), just as in *Spin Master*, there is no asset restraining order currently in place. The TRO expired by its own terms on May 26, 2021 (ECF No. 30). KTM is seeking preliminary injunctive relief including an asset freeze and thus bears the burden of proving its entitlement to such relief. As in *Spin Master*, KTM has failed to carry its burden. *Id.* at *10.

11

failed to carry even this threshold burden. Its request for an asset freeze, therefore, should be rejected.

KTM should finally not be heard to argue that "statutory damages" as a basis for any asset freeze for two reasons.[30] First, it has not argued this as a basis for an asset freeze in its motion and has thus waived it. This argument cannot be raised for the first time in reply. Second, and more importantly, this Court lacks the power to grant such an asset freeze under Rule 65. Providing such relief would be contrary to the Supreme Court's *Grupo Mexico* decision.[31] Statutory damages are not equitable relief and therefore cannot support an asset freeze under Rule 65.[32]

## VI. Waiver

In numerous instances above, Harvest Inn has argued that KTM has waived many of its arguments by failing to raise them or provide any proof in support of them along with its motion. It is hornbook law that a party may not raise issues for the first time in reply briefs.[33] Nevertheless, courts sometimes forgive movant's actions and "cure" these mistakes by allowing a party to file a sur-reply. This Court should not follow this path for several reasons. First, KTM is not an unsophisticated litigant or unrepresented by counsel. It has filed numerous of these "Schedule A" lawsuits represented by counsel who has filed even more for other trademark holders. Any "inadvertence" argument would ring hollow.

---

[30] KTM has previously intimated that the potential availability of $2,000,000 in statutory damages somehow justifies any assert freeze, regardless of the account's relationship to profits or even to products alleged to be infringing.

[31] *Klipsch Group*, 2012 U.S. Dist. Lexis 153137,*10-11 ("freezing assets to preserve an award of monetary damages would appear to contradict the Supreme Court's holding in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527U.S. 308 (1999), which disallows a prejudgment asset freeze in claims brought in law solely to preserve money to satisfy a future judgment.")

[32] *Id.*

[33] *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) (citations omitted) ("arguments raised for the first time in a reply brief are waived."); *see also Mylan Laboratories, Ltd. v. United States FDA*, 910 F. Supp. 2d 299, 312 (D.D.C. 2012) (finding waiver of arguments raised for the first time in a reply in support of motion for preliminary injunction, but not raised in the opening brief).

Second, KTM chose the method it did – making only vague allegations against more than a hundred defendants – as a strategic matter. It could have (and should have) sued each defendant individually, or sued only related defendants where joinder might be proper (a matter addressed in Harvest Inn's motion to dismiss). Instead, it chose to lob only the vaguest allegations against "defendants" and argue against all defendants collectively. It did so as a cost saving measure and to gloss over the fact that many defendants do not fit the facts of what KTM alleges "all defendants" do. KTM should not be permitted to exploit this strategic decision when it suits them and run from it when it does not.

Third, this is not a case where facts or law were unavailable at the time of moving for relief. All the facts and arguments that KTM waived by not raising were facts and arguments that KTM knew of or should have known of before it filed this motion against Harvest Inn. KTM made its bed, now it should be required to lie in it.[34]

Finally, permitting a "do-over" would simply be playing into KTM's overall strategy of making litigation expensive – vastly more expensive compared to the amounts that are likely in controversy.[35] KTM's litigation strategy[36] relies on suing large number of defendants, bending rules and counting on courts to go along[37] when parties do not show up to argue against these tactics. They bend the rules regarding joinder and generally get away with it unless challenged.[38] They bend the

---

[34] *Cf. DirecTV, Inc. v. Perez*, No. 03 C 3504, 2003 U.S. Dist. LEXIS 20269, at *5 (N.D. Ill. Nov. 10, 2003) (Coar, J.) ("when DirecTV filed these lawsuits, it was aware (or at least it should have been aware) that its strategy of joining unrelated defendants in the same lawsuit carried with it a risk that the suits would be dismissed without prejudice for improper joinder under Rule 21.")

[35] Since KTM has not identified the products in its Complaint, Harvest Inn is left to guess what is at issue.

[36] *Patent Holder Identified in Exh. 1*, supra n. 8 (summarizing the "Schedule A" plaintiff's playbook)

[37] The strategy does not always work, as courts in this District appear to be pushing back on these bullying tactics. *See, e.g., H-D U.S.A., LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-01041, 2021 U.S. Dist. LEXIS 37600, at *5 (N.D. Ill. Mar. 1, 2021) (Judge Aspen *sua sponte* raising the issue of joinder and dismissing the complaint).

[38] *Id.*

13

rules regarding service of process and generally get away with it unless challenged.[39] They bend the rules regarding asset freezes unrelated to profits and generally get away with it. Harvest Inn has showed up to oppose KTM's tactics. There is no reason to extend further courtesies and bend the rules for KTM. Paraphrasing Judge Coar in the *Direct TV* decision, when KTM filed this motion, it was aware (or at least it should have been aware) that its strategy of phoning in a four-page brief in support of a request for "extraordinary relief" carried with it a risk that the motion would be denied. That is exactly what should happen here.

---

[39] *See Luxxotica Group S.p.A. v. "Schedule A"*, 391 F. Supp. 3d 816 (N.D. Ill. May 24, 2019) (permitting service by email in an *ex parte* TRO proceeding, but later granting a motion to set aside service for failing to comply with the Hague Convention).

## CONCLUSION

KTM has relied on heavy-handed litigation tactics, including lumping multiple-unrelated defendants together, suing foreign defendants with small claims but tying up vastly larger sums with thinly-supported requests for asset freezes. In this case, it has made sweeping but generalized claims of "counterfeiting" and warned of the dangers to the United States economy of such activities. But as to Harvest Inn, its facts are non-existent. It counted on defendants like Harvest Inn to never show up to contest the claims against them so that they could make dubious claims against frozen accounts, often containing orders of magnitude more than KTM could ever hope to recover at trial. In this case, it will likely succeed in stealing hundreds of thousands from hundreds of small businesses. Some in this case may be truly engaged in the type of counterfeiting that KTM seeks to (and should be able to) remedy. Many, like Harvest Inn, are not.

Date: May 28, 2021

Respectfully Submitted:

*/s/ Michael La Porte*
Michael R. La Porte (mrl@fg-law.com)
FLACHSBART & GREENSPOON, LLC
333 N. Michigan Ave. Suite 2700
Chicago, IL 60601
(312) 551-9500

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on counsel of record who have filed appearances *via* the ECF.

I have not served any other party under Rule 5(a)(1)(D) because the e-mail addresses KTM has used to serve these absent defendants has not been provided to Harvest Inn and is not a matter of public record.