IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KTM AG,<br><br>              Plaintiff,<br><br>   v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>              Defendants. | Case No. 20-cv-1279<br><br>Hon. Judge Robert M. Dow, Jr |

## DEFENDANTS' MOTION TO DISMISS AND
## TO DISSOLVE PRELIMINARY INJUNCTION ORDER

Defendants Anglewide, Anpart, BCtimingparts, CCIYU, CTCAUTO, Findauto and Ineedup, together "Defendants" or "Defendant", through the undersigned counsel, move to dismiss Defendants in this lawsuit and to dissolve the preliminary injunction order. In support of its motion, Defendants join the arguments set forth in co-defendant Harvest Innovation Global Ltd ("Harvest inn")'s motion to dismiss filed on May 28, 2021 (ECF Doc. #34), in co-defendants' motion to dissolve or modify preliminary injunction filed on June 8, 2021 (ECF Doc. #47), in co-defendant's motion to dismiss for failure to state a claim, for lack of jurisdiction and motion to dissolve preliminary injunction (ECF Doc. #57), and states as follow:

## BACKGROUND

Each Defendant operates its own online Amazon store selling aftermarket motorcycle components. Some of selling motorcycle component products are compatible with KTM motorcycles. For their Amazon listings, the descriptions were specifically stated as "Compatible for KTM", "Fit For KTM", "For Honda, For KTM, For Yamaha" (*Exhibit A*, Plaintiff's Infringing Evidences). This is descriptive fair use and is not an infringing use of the term KTM. In a similar proceeding in case 21cv1280 filed in this district court, **Plaintiff's counsel admitted that "compatible with KTM" is not an infringement**, which is also filed in this case as ECF Doc. #47-1 and attached for this motion again as *Exhibit B*.

Notwithstanding the foregoing, however, plaintiff KTM filed one Complaint against hundreds of unrelated defendants which does not mention Defendants other than identifying it in a "sealed" Schedule A, moved *ex parte* for a temporary restraining order to freeze Defendants' Amazon account based on the baseless accusation of trademark infringement, and never attempted to properly serve Defendants under the Hague Convention.

As a result of plaintiff KTM's lawsuit, the temporary restraining order and the preliminary injunction order, Amazon has frozen all funds in Defendants' Amazon account, which is a huge amount, not just amounts tied to any allegedly-infringing products, which in effect is shutting down Defendants' business, while nothing in the

Complaint informs Defendants any specific wrongful conduct it has allegedly committed. This has substantially interfered with Defendants' business and caused Defendants' significant loss. Defendants reserve the right to seek remedy and compensation from Plaintiff for bringing this lawsuit with no basis.

## ARGUMENTS

### I.    COMPLAINT AGAINST DEFENDANTS SHOULD BE DISMISSED

**A.  Dismissal under Fed. R. Civ. P. 12(b)(6)**

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a complaint. *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). A complaint must contain enough information, in the form of "a short and plain statement of the claim," to give the defendant "fair notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To prevail on either a trademark claim or unfair competition claim, Plaintiff must demonstrate that Defendants' use of a protectable mark "is likely to cause confusion among consumers." *Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016). Plaintiff must plead allegations that make it plausible that such likelihood of confusion exists. *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014) ("Allegations of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible."); *Top Tobacco v. Fantasia Distribution Inc.*, 101 F. Supp. 3d 783, 790 (N.D. III. 2015).

In the instant case, Plaintiff failed to allege it has similar distinct product offerings as the Defendants. Defendants are using their own brands in the sale of the complained

products. Plaintiff obviously failed to sufficiently demonstrate that Defendants' use of the word "KTM" is likely to cause confusion among consumers. Even assuming the allegation of likelihood of confusion in the Complaint were sufficient, it is not here, Plaintiff's claims against Defendants should still be dismissed because of the fair use defense. Under 15 U.S.C. § 1115(b)(4), a defendant in a trademark infringement action may invoke the fair use defense by demonstrating that the alleged infringement "is a use, otherwise than as a mark ... which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." This defense "is based on the principle that no one should be able to appropriate descriptive language through trademark registration." 15 U.S.C. § 1115(b)(4); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 951 (7th Cir. 1992); *M.B.H. Enter., Inc. v. WOKY, Inc.*, 633 F.2d 50, 52 (7th Cir. 1980). To prevail on a fair use defense, a defendant must show that: (1) it did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001).

### a. Non-Trademark Use

A word or phrase functions as a trademark when it is used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products. *Sands, Taylor & Wood Co.* at 953. Here, by analyzing the following factors the courts have usually used to determine whether it is a non-trademark use or not, the Court should make a conclusion that Defendants used the word "KTM" in its complained product listing titles in a non-trademark use.

First, the courts have found to support a non-trademark use if the defendant is using other trademarks as source indicators. *Packman*, 267 F.3d at 639-40. Here, Defendants are

not using the word "KTM" to identify themselves as the source of the complained products. Rather, Defendants use their own distinctive brands to identify the source of the complained products. Defendants expressly identify their brands in their Amazon storefront seller profiles. The Defendants brands signifies that the complained products come from them, not the Plaintiff. The use of word "KTM" in the product title does not identify the source of any of the Defendants products, and thus, Defendants use was "otherwise than as a trademark." In addition, a similar use by others in the relevant industry will make the court to support a non-trademark use. *SportsFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 599 (7th Cir. 2019). Sellers of motorcycle or bike parts products regularly invoke the "replacement for ..." or "fit to ..." to describe the products they sell. There are numerous examples of this widespread practice in the industry. We have included and point to the following examples:

- "Battery For iPhone SE 2016 Brand New Replacement Internal (1624mAH) FREE Tools" (eBay)
- "Universal Replacement Vintage Motorcycle Helmet Top Pad Padding fits Buco Bell" (eBay)
- "NOS National Cycle #N2210 Replacement Motorcycle Windshield For Harley Davidson" (eBay)
- "PAC HDK001X Radio Replacement Interface for 1998-2013 Harley-Davidson Motorcycles,black" (Amazon)
- "HFP-382-D Fuel Pump with Strainer Replacement for Ducati Motorcycle" (Amazon)

These examples were found with the most cursory of searches on Amazon and eBay, and it is clearly regular practice to use the name of the branded product to identify the compatibility of the aftermarket product. This widespread industry use is a factor that the

Court shall consider to support a non-trademark use in this case. Further, Amazon has specifically tailored its seller tools to aid customers in finding these aftermarket parts for brand-name products. As can be seen in the final example, "HFP-382-D Fuel Pump with Strainer Replacement for Ducati Motorcycle," Amazon has implemented a specific, customer facing tool to aid in making sure customers are getting the correct aftermarket part (see below). This tool pops up automatically, and is clearly trying to help businesses sell, and customers find, the right replacement aftermarket replacement products for branded goods. In this case, the fuel pump part is a "replacement for" popular brand "Ducati" motorcycle.



Finally, the lack of any assertion of exclusive rights in the designation by Defendants is another factor that the Court will consider to support a non-trademark use. *SportsFuel*, 932 F.3d at 598 (finding that defendant's disclaimer of the challenged designation in its application supports a descriptive use finding).

b.  **Descriptive Use**

Descriptive terms "impart information directly." *M.B.H. Enter.*, 633 F.2d at 54. A descriptive term ordinarily names a characteristic of a product or service. *H-D Mich., Inc. v. Top Quality Serv.*, Inc., 496 F.3d 755, 759 (7th Cir. 2007). Defendants are using their own brands, and others on their product pages while selling the complained products online. The use of "compatible with ..." or "fit to ..." describe a characteristic of Defendants' products, which means that Defendants' products could be used in KTM motorcycles or bikes.

Accordingly, the record supports only one conclusion, that Defendants' use of the word "KTM" in its product title is merely a descriptive use which Defendants, or any other person or entity, may rightfully use, and Defendants' such use is in a descriptive sense in its application supports a descriptive use finding).

### c. Fair and Good Faith Use

A party raising a fair use defense "must show that it used the plaintiff's mark fairly and in good faith." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 725 (7th Cir. 2015). The Defendants' "mere knowledge" of the plaintiff's mark, without other evidence of subjective bad faith, is insufficient. *Id*; *see also SportsFuel*, 932 F.3d at 600; *Packman*, 267 F.3d at 642.

When assessing fairness and good faith, courts may consider the dissimilarity of packaging and labeling, which may be evidence of good faith. *SportsFuel*, 932 F.3d at 598; *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 796 (5th Cir. 1983). While determining the fairness and good faith element, the courts may also consider the degree of likelihood of confusion, as the greater the likelihood of confusion, the less likely the use is fair. *Marketquest Group, Inc. v. BIC Corp.*, 862 F.3d 927, 938 (9th Cir. 2017) (in the fair use analysis, the degree of customer confusion is a factor to consider).

In this case, Defendants used the word "KTM" in the complained product title fairly and in good faith. As an initial matter, Plaintiff failed to allege in the Complaint that

Defendants used the Plaintiff's mark in bad faith. Plaintiff also failed to plead that Plaintiff has the similar product as the products sold by Defendants. Nowhere in the Complaint plead that there is any similarity of packaging and labeling between Plaintiff's products and Defendants' products. Defendants used their own packaging and labeling to sell their products. Defendants used their own brand in selling the complained products on Amazon.com. Defendants' brands identify the source of the complained product. Defendants expressly identify their brands in their Amazon storefront seller profiles on Amazon.com. As such, no reasonable person would believe that the complained products originate from Plaintiff, and Defendants' use of the word "KTM" in its product titles and descriptions would not cause any likelihood of confusion to the general public. Therefore, it is fair to say that Defendants descriptively used the word "KTM" in its product title fairly and in good faith.

For the foregoing, the Court should find that Defendants' use of the language "compatible with …," "fit to …," or similar were a non-trademark use, in good faith, to describe a characteristic of its product.

### d. Nominative Use

Further, the Seventh Circuit has firmly held, in particular factual settings, that nominative type uses are not actionable under the Lanham Act. *E.g., Ill. High Sch. Ass'n v. GTE Vantage Inc.*, 99 F.3d 244, 246 (7th Cir. 1996) (Posner, J.) (citing *New Kids* and noting that the plaintiff could not have sued the defendant for use of its trademark "in advertising if the term were used merely for identification"); *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616 (7th Cir. 1995) (Easterbrook, J.) (endorsing defendant's right to engage in comparative advertising); *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503-04 (8th Cir. 1987) ("[A]n imitator is entitled to truthfully inform the public that it believes ... it has

produced a product equivalent to the original and that the public may benefit through lower prices by buying the imitation.").

The Defendants are offering aftermarket solutions that use "KTM" in product titles and descriptions solely as language to "truthfully inform the public that it believes ... it has produced a product equivalent to the original." Defendants' use of the word "KTM" in their product titles and descriptions are a normative use and are "merely for identification." Thus, it is fair to say that Defendants use fall with the designation of "nominative type uses" and are "not actionable under the Lanham Act" as held by the Seventh Circuit in similar factual cases.

### B. Lack of Jurisdiction

"When a statute gives no clear indication of an extraterritorial application, it has none". *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). State law of Illinois too --- presumptively lack extraterritorial reach". *Hirst v. Skywest, Inc.*, 15 C 02036, 2016 WL 2986978, at 8 (N. D. Ill. May 24, 2016). The long-standing rule of construction in Illinois holds that a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statue. Plaintiff has failed to allege any conduct by Defendants having required degree of effect on either U.S. or Illinois commerce, the Lanham Act and Illinois Uniform Deceptive Trade Practice Act ("IDTPA) cannot reach Defendants extraterritorially. Defendants Anglewide, Ctcauto, Findauto, and BCtimingparts never sold any of alleged counterfeit products in this matter in Illinois.

Defendants Anglewide, Ctcauto, Findauto, and BCtimingparts reasonably

believe that this court does not have personal jurisdiction over them. Illinois courts may exercise jurisdiction over Defendants only if authorized both by the United States Constitution and, as applicable, Illinois law. *American Bridal & Prom Indus. Ass'n Inc.v. The Partnerships*, 192 F. Supp. 3d 924,931 (N.D. Ill. 2016). "There are two types of personal jurisdiction: general jurisdiction, which existsonly when the party's affiliations with Illinois "are so constant and pervasive 'as to render [it] essentially at home" here, *Daimler AG v. Bauman*, 134 S.Ct. 746, 751, 187 L.Ed.2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,919,131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)); and specific jurisdiction, which is "case-specific" and exists where the defendant has "purposefully directed" its activities at residents of the forum state and where the plaintiffs claim is "linked to the [defendant's] activities or contacts with" Illinois, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 105 S.Ct. 2174, 85 L.Ed.2d 528; *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695 (7th Cir.2015)". *American Bridal & Prom Indus. Ass'n Inc*. Id.

The Lanham Act does not authorize nationwide, much less worldwide service of process. *American Bridal & Prom Indus. Ass'n Inc. Id.* The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). Only proper service vests a district court with personal jurisdiction over a defendant. <u>*Luoxttica Group S.P.A. v. Partnerships & Unincorporated,*</u> 391 F. Supp. 3d, 816, 821 (7th Cir. 2019). Defendants Anglewide, Ctcauto, Findauto, and

BCtimingparts sell products through their Amazon online stores to customers. However, they never sold any of the alleged counterfeit products to customers in Illinois. Defendants have no ties to the State of Illinois that would permit the Court to exercise personal jurisdiction over them.

Additionally, this district court has rulings for lack of jurisdiction for similarly cases. See *Sun Chenyan v. The Partnerships and Unincorporated Assoc's Identified on Schedule "A"*, 2021 WL 1812888, at *5 (N.D. Ill. May 6, 2021) (finding no personal jurisdiction where foreign defendants owned and operated eBay storefronts); *Rubik's Brand, Ltd. v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, No. 20-cv-5338 (N.D. Ill. Mar. 4, 2021); and *Ouyeinc Ltd. v. Alucy*, Case No. 20 C 3490 (N.D. Ill. May. 14, 2021).

## II. PRELIMINARY INJUNCTION SHOULD BE DISSOLVED.

### A. Plaintiff Is Not Entitled to Preliminary Injunction.

Defendants joins the arguments in co-defendants abaowus, Amarzon-Automotive Parts, carbour, GUOLI1, HENXIANGPARTS, JOAUTOPARTS' motion to dissolve or modify preliminary injunction filed on June 8, 2021 (ECF Doc. #47) and in co-defendant's motion to dismiss for failure to state a claim, for lack of jurisdiction and motion to dissolve preliminary injunction (ECF Doc. #57).

The purpose of preliminary injunctive relief is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). When evaluating the merits of a motion for preliminary injunctive

relief, a district court must determine whether the party seeking the preliminary injunction has demonstrated that: (1) it has a reasonable likelihood of success on the merits of its claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if preliminary injunctive relief is denied; (4) the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest. *Platinum Home Mtge. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).

Here, plaintiff KTM is not entitled to preliminary injunction against Defendants because KTM is not likely to succeed on the merits, KTM will not suffer irreparable harm, Defendants will suffer irreparable harm from injunction that is disproportionate to the alleged infringement, and the injunction harms the public interest.

KTM is not likely to succeed on the merits of its claims against Defendants. As set forth in the motion to dismiss above, the claims against Defendants should be dismissed not only because the complaint fails to state a valid claim against Defendants, but also because KTM indeed has no trademark infringement claims against Defendants. Defendants' use of KTM is descriptive fair use and is not an infringing use of the term KTM.

Since Defendants do not infringe KTM's trademark, KTM will not suffer any irreparable harm if the preliminary injunction is vacated.

However, Defendants are suffering substantial irreparable harm which severely outweighs KTM's harm, if any. Due to the temporary restraining order and the

preliminary injunction order, Defendants have over $1million dollars restrained. Defendants are legitimate business sellers, with this big, restrained amount, Defendants' business have been severely impacted. Defendants remain unable to access its funds. While Defendants have only sold 819 units of alleged infringing products for a gross revenue of only USD $20955.32, Defendants' funds that have been frozen by Amazon is over $1million. Continued denial of access to all of Defendants' funds will cause irreparable harm which is disproportionate to KTM's claims.

Finally, the injunction will harm the public interest. If Amazon sellers, solely because they sell products and describe their products as compatible with KTM motorcycles, will be sued by KTM in Court for trademark infringement and the Court will routinely grant interim orders freezing their entire Amazon accounts pending the year-long litigation, such Amazon sellers will either choose not to sell these products any more or not to describe these products being compatible with KTM motorcycles. This will cause a chilling effect which will assist KTM to oust its competitors like Defendants from the market, and will ultimately entrench KTM's monopoly status in the aftermarket of motorcycle components. Additionally, KTM is utilizing this district court while targeting foreign online sellers with the arbitrage of U.S. court litigation cost and knowledge, bringing lawsuits that lack legal basis. As stated, Defendants reserve the right to seek remedy and compensation from Plaintiff for bringing this lawsuit with no basis.

As such, the injunction will harm the public interest.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court dismiss

the case, dissolve and vacate the preliminary injunction order, order Amazon to release funds in Defendants' account and lift any restraints on Defendants' account, and direct KTM's counsel William B. Kalbac to notify Amazon to lift any restraints on Defendants' Amazon account, and for such other and further relief as the Court deems just and proper.

Dated: June 21, 2021                         Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei, Esq.
Getech Law LLC
203 N LaSalle ST
Chicago, Illinois 60601
C: (312) 888-6633
Linda.lei@getechlaw.com
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2021, a copy of the foregoing was filed via the Court's ECF filing system, thereby serving it upon all counsel of record.

/s/ Ge (Linda) Lei
Ge (Linda) Lei, Esq.