1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                             EASTERN DIVISION

 3
        KTM AG,                          )
 4                                       )
                         Plaintiff,      )
 5                                       )
        -vs-                             )   Case No. 21 C 1280
 6                                       )
        THE INDIVIDUALS,                 )
 7      CORPORATIONS, LIMITED            )
        LIABILITY COMPANIES,             )
 8      PARTNERSHIPS, AND                )
        UNINCORPORATED ASSOCIATIONS      )
 9      IDENTIFIED ON SCHEDULE A         )
        HERETO, et al.,                  )   Chicago, Illinois
10                                       )   May 26, 2021
                         Defendants.     )   9:15 a.m.
11

12                   TRANSCRIPT OF TELEPHONIC PROCEEDINGS
                   BEFORE THE HONORABLE GARY FEINERMAN
13

14      APPEARANCES:

15      For the Plaintiff:       HUGHES SOCOL PIERS RESNICK & DYM, LTD.
                                 BY:   MR. WILLIAM B. KALBAC
16                               70 West Madison Street, Suite 4000
                                 Chicago, Illinois  60602
17                               (312) 580-0100

18      For various             THE RUSSELL FIRM, LLC
        Defendants:             BY:   MS. ERIN K. RUSSELL
19                              833 West Chicago Avenue
                               Suite 805
20                              Chicago, Illinois  60642
                               (312) 944-2424
21

22      Court Reporter:

23                       CHARLES R. ZANDI, CSR, RPR, FCRR
                              Official Court Reporter
24                        United States District Court
                   219 South Dearborn Street, Room 2144-G
                            Chicago, Illinois  60604
25                       Telephone:   (312) 435-5387
                   email:  Charles_zandi@ilnd.uscourts.gov
```

1  APPEARANCES:    (Continued)

2  For various              AU, LLC
   Defendants:              BY:   MR. ADAM E. URBANCZYK
3                           564 West Randolph Street
                            2nd Floor
4                           Chicago, Illinois  60661
                            (312) 715-7312
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings heard in open court:)

2           THE CLERK:  21 C 1280, KTM versus the Individuals.

3           THE COURT:  Good morning.  Who do we have for the

4    plaintiff?

5           MR. KALBAC:  Good morning, your Honor.  This is Bill

6    Kalbac, K-A-L-B-A-C, for the plaintiff, KTM.

7           THE COURT:  And then we have -- do we have attorney

8    Russell on the line?

9           MS. RUSSELL:  Yes.  Good morning, your Honor.  I

10   represent 14 of the defendants in this matter.  I can recite

11   the store names if you like.

12          THE COURT:  That's all right.  We have it on the

13   docket.

14          MS. RUSSELL:  Okay.

15          THE COURT:  And then do we have attorney Urbanczyk on

16   the line?

17          MR. URBANCZYK:  Yes.  Good morning, your Honor.  Adam

18   Urbanczyk for defendant Race_ing.

19          THE COURT:  And do we have anybody, either a party or

20   attorney, on behalf of any of our defendants on the line?  All

21   right.  We have no one else.

22          So, we have -- well, first and foremost, just in

23   terms of cleaning up the docket, I'll deny as moot docket 43,

24   which is a motion to dismiss from Miss Russell's clients,

25   because there's an amended motion that's docket 44.

1          MS. RUSSELL:  Correct.

2          THE COURT:  And the motion -- and then we have a

3    motion that was filed this morning by attorney Russell to

4    vacate the preliminary injunction on behalf of her clients;

5    and I haven't had a chance to look at it since it was filed

6    this morning, but we have a motion from Mr. Urbanczyk to

7    dissolve the preliminary injunction.

8          So, the motion to dismiss and the motion for

9    preliminary injunction, I imagine both of them, all have a

10   common theme, which is:  There's been no infringement because

11   the Amazon stores in question aren't saying that these

12   products that -- are originated from KTM.  All they're saying

13   is that these products can be used on a KTM conveyance, like a

14   Yamaha conveyance or a Harley-Davidson conveyance.

15         So, I'm wondering what the plaintiff has to say about

16   this.

17         MR. KALBAC:  So, your Honor, I've had the chance to

18   look at the evidence of infringement for quite a few of

19   the stores, and they're not -- the majority of them are

20   actually saying that these are products for KTM.  For

21   example --

22         THE COURT:  Could you point one out to me?

23         MR. KALBAC:  Yes.  If you were to look at defendant

24   No. 61.  The name of the store is Orange --

25         THE COURT:  If you could refer to a docket entry and

1  a page.

2  MR. KALBAC:  Oh.  It would -- the page -- it would be

3  part of our exhibits.  Let me find that.  It's on page 460.

4  THE COURT:  Okay.  Which one, 10 or 11?

5  MR. KALBAC:  It would be -- sorry.  Let me find that

6  real quick.  I'm sorry.

7  I believe it's on 11.

8  THE COURT:  So, it's 11, and --

9  MR. KALBAC:  Yes.  We --

10  THE COURT:  And page 460, 4-6-0?

11  MR. KALBAC:  Yes, 4-6-0.

12  THE COURT:  Okay.

13  MR. KALBAC:  And the name of the store is OrangeABC.

14  THE COURT:  And is this one of the moving defendants?

15  MR. KALBAC:  Yes.  It's one of Miss Russell's

16  defendants.

17  THE COURT:  Okay.  4-6-0.  All right.

18  Yeah, on my 4-6-0, it just says it's compatible with

19  KTM motorcycles.  It doesn't say that it's affiliated with

20  KTM motorcycles.

21  MR. KALBAC:  Your Honor, I'm sorry.  I think it's on

22  that first exhibit, on Exhibit 10.  I apologize for that.

23  THE COURT:  Well, since you directed me to docket

24  entry 11 and page 460, are you saying that this is an

25  infringement, if it says, "compatible with KTM motorcycles"?

1    MR. KALBAC:  In that case, if it says, "compatible
2    with," I would say that that would not be an infringement.
3    However, quite a few of these do say --

4        THE COURT:  So, why are you alleging infringement
5    based on this "compatible with KTM motorcycles"?

6        MR. KALBAC:  Well, they're using the KTM name, and
7    they don't have permission to use our trademarked name in the
8    marketing and sales of their products.

9        THE COURT:  So, is it an infringement or not?

10       MR. KALBAC:  In that particular case, I would say no.
11   However, there are quite a few other --

12       THE COURT:  Then why -- this is the question.  Why do
13   I have page 460 of docket 11 in the evidence of infringement
14   if you're saying that it's not infringement?

15       MR. KALBAC:  I would have to check on that.  I
16   apologize, your Honor.  I do think that there could be a -- an
17   argument made for non-infringement if it does say, "compatible
18   with," but quite a few of these actually say they are -- for
19   example, page 460 -- I think it's on the first exhibit, which
20   is 10, it says, "New HP carburetor for KTM motorcycle."  In
21   that case, it would be alleging that this is a product -- an
22   original manufactured product for KTM; and that would be a
23   case for clear infringement.

24       THE COURT:  No, it doesn't say KTM as -- it doesn't
25   say the product is being manufactured by KTM.  It's saying

1    it's a carburetor for a KTM motorcycle.  Just like you said
2    the one on 460 is not infringement.
3           MR. KALBAC:  Well, I think, your Honor, a person
4    doing a search for KTM products could easily read this to be
5    it is a product for KTM.  If it says it's a new carburetor --
6           THE COURT:  Yes, the person would read it as it's a
7    product for KTM.  You're exactly right.  The argument you're
8    not making is a person could reasonably read this thinking
9    that the product came from KTM.
10          MR. KALBAC:  I would -- when I read this, I believe
11   it would be from KTM because I would be looking for products
12   from KTM.  It says it's a new product.  It doesn't say this is
13   a remanufactured.  This doesn't say, you know, anything about
14   the description that this product was not made by KTM.
15          THE COURT:  How -- let's go to the first page of
16   docket entry 10.
17          MR. KALBAC:  Okay.  And this is for No. 1, MIDUDU?
18          THE COURT:  I don't know.  I'm just on page 1 of
19   docket entry 10.  And it says, "Oil filler cap plug for KTM
20   540, 550, 620, 640," and then it says, "Adventure, Duke,
21   Enduro, SM, 690."
22          Are Adventure, Duke, and Enduro different motorcycle
23   manufacturers?
24          MR. KALBAC:  Duke is part of KTM, and on our
25   trademark registrations, we have trademark registrations for

1    both KTM and Duke.  I don't know any -- I don't have any

2    information regarding Enduro.

3            THE COURT:  Okay.  So, what does this say to you?

4            MR. KALBAC:  It says, "Oil filler cap plug for KTM,"

5    and then it lists a number of models of KTM motorcycles.

6            THE COURT:  Right.  Doesn't the brand say, "Monster

7    Jesus"?  Well, actually, the brand says, "Thanhcong," right?

8    It's on page 1.

9            MR. KALBAC:  Yes.

10          THE COURT:  So, doesn't this convey to the reasonable

11    person that it's a Thanhcong brand oil filler cap plug that

12    can be used in any of these branded motorcycles?

13          MR. KALBAC:  I would still say, your Honor, that it

14    would lead a reasonable person to believe that this was made

15    by KTM based on the bold description at the very top.

16            And if someone were to search for a KTM oil filler

17    cap plug, this would probably be towards the top of the search

18    results.  They would not be searching for the brand Thanhcong.

19    They would be searching for KTM and using our client's

20    trademark name in that search.

21          THE COURT:  Right.  But what's the difference between

22    that and between something that says, "compatible with KTM

23    motorcycles," that you said was not infringement?

24            MR. KALBAC:  Well, "compatible with" would lead the

25    reasonable person to believe that this was manufactured by

1  someone else other than KTM, as opposed to being manufactured
2  by KTM.

3  THE COURT:  But it doesn't say, "by."  It says --
4  the other ones don't say, "by."  The other ones say, "for."

5  MR. KALBAC:  I would still say, your Honor, that I
6  believe this would lead a reasonable person --

7  THE COURT:  And it actually says the brand name,
8  which is Thanhcong, or whatever the --

9  MR. KALBAC:  Well, when people are doing a search,
10  they're going to search for KTM, and this is going to show up.
11  The brand -- you know, it doesn't -- it's kind of in smaller
12  print below --

13  THE COURT:  That's not infringement.  That's not
14  infringement because the same thing could be said of docket 11
15  at page 460.  If you search for KTM, you're going to come up
16  with this -- you're going to get this result.  So, that can't
17  be enough.

18  MR. KALBAC:  Our client is trying to protect, you
19  know, the brand -- the licensees who they have who are paying
20  money to license out the KTM trademark.

21  THE COURT:  So, let's say there's a part that says,
22  "For KTM models whatever, for Ducate models whatever, for
23  Harley models whatever, for Yamaha models whatever."  Do each
24  of those four motorcycle manufacturers have trademark claims
25  against the manufacturer of that component?

1    MR. KALBAC:  I would say yes.

2    THE COURT:  And so what you're saying is that,

3  then -- that a reasonable person would look at that ad and

4  think that the component was made by all four of those

5  independent motorcycle manufacturers?

6    MR. KALBAC:  Yes.  When you do a search for, say,

7  Yamaha or KTM, you would be looking for parts.  And I would

8  say a reasonable person would think that those parts were

9  made by those manufacturers.

10    THE COURT:  The same part was made by all four

11  manufacturers?

12    MR. KALBAC:  Yes.

13    THE COURT:  How could that be?

14    MR. KALBAC:  I -- I would say that the brand --

15  whoever is selling this is acting as though they are the

16  manufacturer for Yamaha or KTM or the other manufacturers.

17  I think --

18    THE COURT:  Okay.  I've lost confidence in this

19  case.  I've looked at the evidence that you've pointed me

20  to -- well, you've acknowledged that some of the evidence,

21  even in your view, is not -- does not indicate infringement.

22  And the evidence that you're pointing me to that you think

23  does indicate infringement to me does not indicate

24  infringement.  If you're saying that there's something -- that

25  there's a part for a branded product, and especially if there

1    are more than one brand, branded products mentioned, and

2    they -- I'm talking about the motorcycle -- and that the

3    component part actually indicates what the brand is, here,

4    it's Thanhcong, I don't think a reasonable person would look

5    at this and think that the purveyor was selling KTM-originated

6    parts.

7            So, I'm going to grant the motion to vacate the

8    preliminary injunction, not just as to the defendants who

9    moved, but to all defendants.

10           You know, you guys are repeat players, you and your

11    colleagues in this part of the bar.  And you operate a volume

12    business.  And there's nothing wrong with that, but there's

13    an element of trust that the Court has with parties and with

14    law firms that file the same case over and over again.  And

15    again, I'm not being pejorative.  That's perfectly fine.

16           But having taken a closer look at this -- and I have

17    to confess, when I granted the preliminary injunction -- the

18    TRO and preliminary injunction motion, I did not look at all

19    1150 pages of evidence that you submitted.  Maybe I'm going to

20    have to start doing that because having had these defendants

21    appear and pointing out what they pointed out to me, the

22    evidence does not bear out what the plaintiff alleged in the

23    complaint and what the plaintiff argued in the preliminary --

24    in the TRO motion and in the preliminary injunction motion.

25           And so I -- having looked at what the defendants

1   pointed me to, I think the likelihood of success on the

2   merits for the plaintiff has gone down a lot; and that

3   changes the calculus, the preliminary injunction calculus.

4   So, I'm going to vacate the preliminary injunction, not just

5   as to these defendants but to all defendants, just because I

6   don't have the requisite level of confidence in this

7   particular case anymore.

8          So, I'm going to grant docket 47 and docket 52, which

9   are the motions to vacate the preliminary injunction, dissolve

10  the preliminary injunction.  And 43, of course, is denied as

11  moot.

12         Let's set a briefing schedule on 44.  KTM, how long

13  would you like to respond?

14         MR. KALBAC:  Could we have two weeks, your Honor?

15         THE COURT:  Sure.

16         MS. RUSSELL:  Your Honor, we can adjust -- this is

17  Erin Russell, for the record, your Honor.  I just want to

18  point out, I think there might already be a briefing schedule

19  for that motion.  I'm happy if you want to adjust it.

20         THE COURT:  Actually, there is.  There is a briefing

21  schedule, and we have our motion hearing set for June 30th.

22  Thank you for putting that out.  That's my order on docket 45.

23  So, we have our briefing schedule set on that.  So, we'll see

24  you on June 30th.

25         If the plaintiff -- you know, a preliminary

1  injunction is interlocutory.  An order dissolving a
2  preliminary injunction is interlocutory.  So, there's nothing
3  that is stopping the plaintiff from coming in and seeking a
4  new preliminary injunction motion based on a better factual
5  record, a record showing that there actually is a sufficient
6  likelihood of success that there is infringement, meaning
7  that the defendants are conveying that they are selling
8  KTM-originated parts and not just parts that are compatible
9  with a KTM motorcycle; or if the plaintiff would like to make
10 a legal argument, which is even if it says "compatible with"
11 or "for," that's still covered by the federal laws or the
12 state laws that the plaintiff is invoking.  That argument was
13 not made in the preliminary injunction motion that I had
14 granted, perhaps erroneously.
15      So, the field is wide open for the plaintiff.  You
16 can come back in and seek relief.  I think you know what I'm
17 looking for in terms of the facts and what I'm looking for in
18 terms of the law.  In case you think that my understanding of
19 the law that I just expressed over the past few moments is
20 incorrect, I'm more than happy to hear you out.
21      Anything further from attorney Russell?
22      MS. RUSSELL:  No, your Honor.
23      THE COURT:  Anything further from attorney Urbanczyk?
24      MR. URBANCZYK:  Nothing further.
25      THE COURT:  Anything further from the plaintiff?

1        MR. KALBAC:  No, your Honor.  I appreciate your time

2   this morning.

3        THE COURT:  Thank you.

4        MS. RUSSELL:  Thank you, your Honor.

5     (Which were all the proceedings heard.)

6                          CERTIFICATE

7     I certify that the foregoing is a correct transcript from

8   the record of proceedings in the above-entitled matter.

9

10  */s/Charles R. Zandi*              *June 2, 2021*

11  Charles R. Zandi                   Date
    Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25